**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Matthew M. Guiney (*pro hac vice* to follow)
270 Madison Ave.
New York, NY 10016
Tel.:  (212) 545-4600
guiney@whafh.com

**LYNCH DASKAL EMERY LLP**
137 W. 25th St.
New York, NY 10001
Tel.:  (212) 302-2400

*Attorneys for Plaintiffs Rong Zhang, Xiaodan Wang, and*

*Chong Shen Raphanella and Proposed Lead Counsel for the Class*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella, individually and on behalf of all others similarly situated, | No. CV-_____ |
| Plaintiffs,<br><br>v. | **CLASS ACTION COMPLAINT** |
| Voice of Guo Media, Inc., GTV Media Group, Inc., Saraca Media Group Inc., Rule of Law Foundation III, Inc., Rule of Law Society IV Inc., Sara Wei a/k/a Lihong Wei Lafrenz, and Wengui Guo a/k/a Miles Guo a/k/a Ho Wan Kwok a/k/a Miles Kwok a/k/a Nan Wu a/k/a Haoyun Guo. | |
| Defendants. | |

Plaintiffs Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendants' public documents, announcements made by defendants, wire and press releases, public filings on judicial dockets, and information readily available on the Internet.  Plaintiffs additionally believe that substantial evidentiary support will exist for these allegations after a reasonable opportunity for discovery.

## I.      NATURE OF THE ACTION

1.      This action involves the purported sale of unregistered securities to unsophisticated investors in the Chinese diaspora to their detriment and to the benefit of defendant Miles Guo, a wealthy Chinese businessman with a multi-media empire, his associate Lihong Wei Lafrenz, and their affiliates.  These investments were touted via multiple media channels, such as YouTube and Discord, to inexperienced investors as being risk-free and highly lucrative. Materials concerning the investments on Mr. Guo's affiliated website included broad statements such as, "From a business perspective, there is no risk whatsoever, so long as you have trust."[1]  Each of these investors have not received a single cent back in return for the investment of their hard-earned money, even upon request for redemption, indicating the investments were anything but real, let alone risk-free or lucrative.  Nor have the investors received anything resembling proof of their investment or ownership interest.  Instead, they are left with worthless paper or none at all.

---

[1] https://www.wsj.com/articles/fundraising-feud-spurs-anger-among-a-chinese-exile-his-followers-and-his-detractors-11601828700.

2.      Mr. Guo, through his media empire and other social media platforms, touted investments in GTV Media Group, Inc. ("GTV").  These investments were purportedly opportunities to be on the ground floor of a new media platform designed to allow its members to exchange in the free flow of information about the People's Republic of China outside of government control and influence and thereby provide an alternative means of communication for those within Chinese communities around the world.  According to Mr. Guo and GTV promotional materials, a successful platform would have a significant user-base because it would be outside the People's Republic of China's considerable oversight of its domestic media channels.

3.      Guo promoted investments in GTV through two channels. First, direct investments in GTV were purportedly available through private placements to those who could meet the $100,000 minimum required of qualified and accredited investors. In reality, that requirement was put in place to give supposed imprimatur of a legitimate and above-board operation and provide a veneer of only being available to accredited investors.

4.      Second, Guo directed those that were unable to meet the supposed private placement threshold of $100,000 for direct investment in GTV to invest smaller sums through Sara Wei (a/k/a Lihong Wei Lafrenz).  Investors were told Ms. Wei was to pool the smaller sums of money and invest them in GTV through another entity, defendant Voice of Guo Media, Inc. ("VOG"), on their behalf.  Each of the Plaintiffs and the Class were such investors that invested in GTV securities through Ms. Wei and/or VOG.

5.      Having taken the investors' money, Ms. Wei and VOG neither purchased shares of GTV nor returned the money to investors.  They either kept the investors' money for themselves or their affiliates; gave it Guo, GTV, or some an entity associated with Guo without obtaining shares in GTV; or did some combination of both.

6.      Through a relentless media campaign, Guo and Wei convinced Plaintiffs and the Class to invest their hard-earned income in an apparently worthless venture.  The purported GTV securities were never registered per state or federal regulations, and upon

information and belief, like Plaintiffs, no investor ever received any annual reports, equity records, or financial statements as to the performance of their purported investments. Many investors, frustrated by the lack of documentation and communication from Wei and Guo, requested refunds. Almost all investors who requested refunds were continually strung along until they understood no refunds would be forthcoming.

7.      Accordingly, this is a class action on behalf of all persons who made payment for GTV securities through VOG and neither received such securities nor received a refund of their investment (the "Class"). This action seeks to recover damages for the Class caused by Defendants' violations of state securities laws and to pursue remedies under Title 44 (44-1841; 44-1842; 44-1991; 44-1998; 44-1999) of the Arizona Revised Statutes, as well as violations of common law, against VOG, GTV, and certain of their affiliates.

## II.      JURISDICTION & VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as well as 28 U.S.C. § 1332(d)(2).  The Court has jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

9.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because many of the false and misleading statements were made in or issued from this District, and Voice of Guo is an Arizona corporation and its offices are located within this District.

## III.      PARTIES

11.      Plaintiff Rong Zhang is a resident of the State of California who made payment to Defendant Rule of Law Foundation III Inc. and Defendant Voice of Guo Media Inc. in order to obtain GTV securities.

12.     Plaintiff Xiaodan Wang is a resident of Canada who made payment to Defendant Rule of Law Society IV Inc. and Defendant Voice of Guo Media Inc. in order to obtain GTV securities.

13.     Plaintiff Chong Shen Raphanella is a resident of the State of Maryland who made payment to Defendant Wengui Guo and Defendant Voice of Guo Media Inc. in order to obtain GTV securities.

14.     Defendant GTV Media Group, Inc. is a Delaware corporation with its principal place of business in New York.

15.     Defendant Voice of Guo Media Inc. is an Arizona corporation that is located at 14747 N. Northsight Blvd. Ste. 111 # 405, Scottsdale, Arizona 85260.

16.     Defendant Rule of Law Foundation III Inc. ("Rule of Law Foundation") is a Delaware not-for-profit corporation and purported 501(c)(3) organization headquartered in New York.

17.     Defendant Rule of Law Society IV Inc. ("Rule of Law Society") is a Delaware not-for-profit corporation and purported 501(c)(3) organization headquartered in New York.

18.     Both Rule of Law Foundation and Rule of Law Society are located at 800 5th Avenue, Suite 21F, New York, New York 10065.

19.     Defendant Saraca Media Group Inc. ("Saraca") is a Delaware corporation with offices at 162 E. 64th Street, New York, New York 10065, the same address as GTV. Upon information and belief, Saraca purportedly owns or controls GTV Media Group, Inc. and an online media website, "GNews," and a company called "Guo Media" through which it publishes statements from or about Defendant Guo and his ventures.[2]  Saraca also owns trademarks that feature Defendant Guo's names and aliases, including "Guo

---

[2] https://www.axios.com/steve-bannon-contract-chinese-billionaire-guo-media-fa6bc244-6d7a-4a53-9f03-1296d4fae5aa.html; https://www.bcsc.bc.ca/enforcement/early-intervention/investment-caution-list/2020/gtv-media-group-inc.

Wengui" and "Miles Guo."   According to Saraca's 2020 tax listings, non-party Guo associate Daniel Podhaskie is Saraca's president and director.[3]

20.    Defendant Sara Wei a/k/a Lihong Wei Lafrenz is VOG's President, Director, and Manager and, upon information and belief, is a resident of Arizona.

21.    Upon information and belief, Defendant Wengui Guo a/k/a Miles Guo a/k/a Ho Wan Kwok a/k/a Miles Kwok a/k/a Nan Wu a/k/a Haoyun Guo, is a foreign national residing in the State of New York. Upon information and belief, Defendant Guo holds, controls, or otherwise has a large beneficial interest in GTV; *i.e.,* the "G" in GTV stands for "Guo." Guo, upon information and belief, also holds, controls, or otherwise has a large interest in Saraca.

22.    Defendants Wei and Guo are together referred to herein as the "Individual Defendants."

23.    Each of the Individual Defendants: (a) directly participated in the purported sale and inducement of the purchase of the unregistered securities; (b) was privy to the scheme orchestrated through VOG, Rule of Law Foundation, Rule of Law Society, and GTV; (c) was aware of confidential proprietary information concerning VOG and its relationship with Rule of Law Foundation, Rule of Law Society, and GTV; (d) was aware of or recklessly disregarded the fact that the securities being offered were not registered as required by law; (e) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein; (f) was aware of or recklessly disregarded the fact that false and misleading statements were being issued concerning VOG and GTV; and/or (g) approved or ratified these statements.

---

[3] https://www.washingtonpost.com/context/2020-tax-report-filed-by-saraca-media-group-inc/2aa28da0-f094-45a4-9cb7-4cd2e3eaf2b3/?itid=lk_inline_manual_36.

24.   GTV, Saraca, VOG, Rule of Law Foundation, Rule of Law Society, and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   Background

25.   GTV is a purported media company created in April 2020 by Defendant Guo, a self-described Chinese political dissident located in the U.S. since fleeing China in 2014.  After arriving in the U.S., Guo built a large following online, particularly among the worldwide Chinese diaspora, and has alleged high-level corruption in China's Communist Party.  He has also reportedly applied for asylum in the United States.[4]

26.   Defendant Guo is well-known for his extravagant lifestyle with a $65 million apartment in New York and a mega yacht,[5] often streaming videos online from both.  Defendant Guo's following is such that his die-hard supporters rally against any dissenting voices, often harassing and picketing outside their homes and businesses.[6]

27.   Guo sought to capitalize on that popularity when he established GTV.  As reported in the Wall Street Journal, one fundraising document for GTV said the venture aimed to be "the only uncensored and independent bridge between China and the Western world."[7]

28.   Over the course of 2019 and early 2020, Defendants developed GTV's video broadcast platform and website (the "GTV Platform").  By March 2020, Defendants had developed an initial release version of the GTV Platform.  Over the next several months, Defendant Guo began broadly soliciting investors to make investments in GTV through a

---

[4] https://www.nytimes.com/2017/09/07/world/asia/china-guo-wengui-corruption-asylum.html.
[5] https://www.nbcnews.com/politics/justice-department/who-chinese-mogul-who-owns-boat-steve-bannon-was-busted-n1237511.
[6] *See* https://www.courthousenews.com/wp-content/uploads/2021/01/Injunction-January-2021-1.pdf; https://www.washingtonpost.com/nation/2020/12/18/guo-wengui-chinese-dissidents-teng-biao/.
[7] https://www.wsj.com/articles/fundraising-at-company-tied-to-steve-bannon-and-guo-wengui-faces-probe-11597857467.

number of channels, including YouTube, the GTV Platform itself, GNews (a website connected to GTV that is under Guo's control), as well as other social media platforms. Upon information and belief, on April 7, 2020, Guo boasted in a broadcast to the public that there were so many people who wanted to invest in GTV that "one or two or three billion dollars could be raised in one minute" and that GTV stock would rise by as much as "10 times."

29.     GTV's solicitations told potential investors it would be a platform for news, social media and e-commerce, with competitors including Amazon.com Inc., Tencent Holdings Ltd.'s WeChat and ByteDance Ltd.'s TikTok. According to the Wall Street Journal, a fundraising memo for potential investors stated a pre-investment valuation of $1.8 billion for GTV.[8]

30.     Indeed, this high-valuation was repeatedly touted by Defendants.   For example, in an April 6, 2020 livestream, Defendant Guo stated that: "[In a year,] the market value [of the GTV platform] is absolutely going to be multi-hundred billion, absolutely multi-hundred billion." (unofficial translation).[9] In another livestream on May 9, 2020, Defendant Guo claims that private placement investment is "risk-free", and "will generate 100x or 1000x the return." (unofficial translation)[10]  In an August 2, 2020 post on GNews.org entitled, "Miles Guo: The potential of GNews and GTV is infinite," Defendant Guo reportedly stated "Our Gnews viewer and registration numbers grow by multiples every week.  Up to last week, its business valuation is already $2 billion U.S. dollars."[11]

**B.     Defendants Made Misrepresentations to Induce Plaintiffs and the Class into Investing in GTV Securities Through Ms. Wei and/or VOG**

31.     In a June 2, 2020 address, Defendant Guo announced:

---

[8] *Id.*
[9] https://youtu.be/qZEuskVmo9s.
[10] *See* https://gtv.org/video/id=5eb6adce79cccb4c587eab8d.
[11] https://gnews.org/282957/.

> We've accomplished the privately offered project of GTV, bearing the hopes of our friends-in-arms and likeminded people. We've made a history that during this pandemic, this shut-down of economy and downturn of finance, we managed to raise 3500 [sic] million dollars from individuals, in addition to 1170 [sic] million dollars raised from VOG, which will be joined as institutional investors later. Every investor is the donor to the Rule of Law Foundation or the Rule of Law Society, and each of the fund marks their faith in freedom, democracy and their anti-CCP struggles. The total funds raised has elevated our estimated market value from 2 billion dollars to 10 billion dollars.[12]

32.     As noted by Defendant Guo in this announcement, VOG was a vehicle through which smaller investors could purportedly partake in the GTV investment.  Also noted by Guo, as confirmed by Defendant Wei and the experiences of Plaintiffs, each investor was required to make a donation to ancillary foundations, such as Defendants Rule of Law Foundation and Rule of Law Society, or, alternatively, directly to Guo via Livestream, one of the platforms on which Guo streamed that allows viewers to donate as they watch, in order to invest.[13] The purpose of requiring the supposed charitable contributions was to foster a sense of community among like-minded investors so that Guo could convince gullible members of the Chinese diaspora to part with their hard-earned money.

---

[12]  The June 2, 2020 address is summarized by GNews.org at https://gnews.org/221062/.  The original video recorded in full in Chinese is available, https://youtu.be/oa1Ab3UhsW8.

[13]  Mr. Guo had noted, in Chinese, that only his true supporters would be allowed to invest and donating to these ancillary foundations is the way to prove loyalty.  *See, e.g.,* https://gtv.org/video/id=5fd7fa9e09267020eb51302e ("All we wanted to do was to share the GTV whistleblowing platform, its profits, its expected value, and its appreciation in value, with our friends-in-arms. This is why, we only gave it to donors of the Rule of Law Foundation and the Rule of Law Society, and the people who have contributed, who have shed blood, sweat, and tears, and who have taken risks in the Movement." (unofficial translation)) ; https://gtv.org//?videoid=5f595089245d3c0579a0a339 ("We don't sell to anyone else, we only sell to these friends-in-arms who have supported the Whistleblower Movement, the Rule of Law Foundation and the Rule of Law Society, the friends-in-arms who fought side by side with us, and the people who have invested in GTV, no one else." (unofficial translation)).

33.     Indeed, Mr. Guo acknowledged earlier this year that he had "said more than ten times in my livestream, that if you have less than $100,000, you go to Sara." (unofficial translation). [14] For example, in a May 21, 2020 livestream, when Sara Wei had allegedly pooled approximately $70 million from investors, Mr. Guo openly praised VOG and Ms. Wei for "helping so many friends-in-arms", who "would not have had an opportunity to get involved."[15]  The next day, he praised Ms. Wei again for helping the "friends-in-arms with less means" to get on board with the GTV private placement.[16]

34.     Voice of Guo operates multiple media channels on YouTube as well as on Discord.[17]  As confirmed by the Arizona Corporation Commission, and confirmed by her LinkedIn profile, Sara Wei is the President, Director, and Manager of VOG.  Plaintiffs and other duped investors viewed Sara Wei as the person in direct contact with Guo as he repeatedly mentioned their discussions in his broadcasts and promoted smaller investments in GTV using Ms. Wei and VOG as a conduit to aggregate those smaller investments.

35.     Through YouTube and Discord, a social media service that allows for large group-chats and interactions, as well as sub-channels for various topics, Ms. Wei

---

[14]  *See, e.g.,* https://gtv.org/video/id=6012cc1fb819717e79b4f085.

[15] https://gtv.org//?videoid=5ec6829b82e098349faafa13 ("Sara just by herself, just by Sara herself, can you imagine, [pooled] $70 million, almost $100 million, my god."; "This time, I am deeply moved by VOG. Sara, unintentionally, she has been supporting the Whistleblower Movement since years ago, she registered this company, and started receiving ad revenue, and doing business. Not only is there ongoing business, but it is also a completely legitimate company. Audited, completely legal. And she ended up helping so many friends-in-arms, many of the friends-in-arms would not have had an opportunity to get involved. Helped so many people!" (unofficial translation)).

[16] https://gtv.org/video/id=5ec7d25ae37fdd30a5e93e56 ("Sara is such a Boddhisatva.  I cared most about our friends-in-arms with less means, that we do not leave the friends-in-arms with little money behind.  Sara helped us to achieve that, I am really appreciative of her efforts." (unofficial translation)).

[17]  *See, e.g.,* https://www.youtube.com/channel/UCNKpqIqrErG1a-ydQ0D5dcA; https://www.youtube.com/channel/UCbujLoHxA16TveAXWGx2xSg.

communicated with potential investors that were interested in pooling funds through VOG to invest in GTV.

36.     Interested investors, like Plaintiffs, were first told that they needed to make donations to the Rule of Law Society or Rule of Law Foundation (purported non-profits affiliated with Mr. Guo), and to provide a proof of donation in order to qualify to invest.

37.     For example, in a May 12, 2020 video posted on GTV.org, Ms. Wei told investors, in Chinese, that "the first thing I need from you is your proof of donation to Rule of Law Foundation.  Don't ask me if you are still eligible if you donated after April 1, as long as you have a proof of donation it's fine.  Your experience supporting Mr. Guo, I like to read that too, we can share that later.  Then, you need to tell me if you have more or less than $100,000.  You must let me know.  If it's more than $100,000 I will contact the headquarter, if it's less than $100,000, us VOG will collectively do it for you." (unofficial translation).[18]

38.     After the donation was made, Ms. Wei, or one of her agents, would proceed to contact the investors and request that they fill out various forms and provide identification via email or private chats.  Various email addresses were used to facilitate this process, including sarawei@protonmail.com, vog202064@protonmail.com, vog202064@gmail.com, and others.

39.     Among the documentation sent to the investors to be completed was a "Limited Purpose Agency Agreement" designating Ms. Wei to purchase shares in GTV Media Group on behalf of the investor.  Relevantly, the agreement states:

> [T]he Investor and his/her successors and assigns, does hereby assign, direct, and designate Lihong Wei Lafrenz (hereinafter referred to as the "Agent"), her successors, assigns, and affiliates, to purchase on my behalf, with funds to be provided by me in the sum of $_____, certain shares in GTV Media Group, Inc. (hereinafter referred to as the "Investment"). . . .

---

[18] *See* https://gtv.org/video/id=5fe8de4687fabe2daf2b6d59.

40.     A blank version of this agreement is attached hereto as <u>Exhibit A</u>.  The contact information on the agreement for the agent, Ms. Wei, is the same as that listed in Arizona Corporation Commission's records for VOG.

41.     Plaintiffs did not receive counter-signatures and, upon information and belief, no counter-signatures were provided to the investors.

42.     The investors were directed to then wire the amount of their investments to bank accounts controlled by Ms. Wei and/or VOG in order to pay for their purported investments in GTV.

43.     No shares of stock were issued to Plaintiffs or any other investors, nor were any confirmations provided as to holdings in VOG or GTV.  To date, no financial reports, annual statements, or other indicia of ownership have been provided to Plaintiffs or the Class.

44.     The investment window for GTV purportedly closed on June 2, 2020, though investments continued to be accepted by the defendants in their scheme after that date.  Mr. Guo announced in his June 2, 2020 online address that over $350 million was raised in the offering for GTV, with an additional $117 million pooled by VOG to be included at a later time.

C.     **Defendants Misrepresent the Status of the VOG Funds**

45.     Soon after the purported close of investments on June 2, 2020, questions began to arise among investors, in chatrooms and other media as to the nature of the investments and whether the investments were tied to legitimate companies.  Investors who sent money to Ms. Wei or VOG were especially concerned, as Mr. Guo's announcement stated that the $117 million pooled by VOG had not been included in the offering.  However, no concrete information was forthcoming from Defendants.  For example, in a June 17, 2020 address, Mr. Guo cautioned investors that despite a lack of

response to their inquiries, they should continue to wait, and he directed VOG investors to contact VOG directly.[19]

46.     In June and July 2020, Ms. Wei informed investors via Discord chatrooms that the delay in confirming receipt of the investors' transfers and in countersigning the Limited Purpose Agency Agreement was caused by Wells Fargo and Chase putting a portion of the funds on hold.[20]  Ms. Wei informed the investors that as soon as the funds were released by the banks, she and her associates would contact each VOG investor to confirm receipt of the transfer and to countersign the Limited Purpose Agency Agreement. During this period, Ms. Wei and Mr. Guo encouraged investors to join a lawsuit that VOG was about to start against Wells Fargo in order to get the money released.

47.     At the end of July 2020, Ms. Wei informed investors that she was finally able to get the money released from the banks.

48.     In August 2020, the Wall Street Journal reported that the FBI, the SEC, and the New York Attorney General's Office were all investigating the purported investments in GTV and that several bank accounts associated with Saraca and GTV had been closed or frozen.

49.     In publicly released letters purportedly sent to the SEC due to its investigation, VOG and Ms. Wei represented that they were in receipt of funds from investors in connection with GTV Media Group, Inc.  The letter also represents that the entities had transferred over $61 million to Saraca and GTV between April 2020 and July 7, 2020.

50.     Ms. Wei represented to investors that she still has approximately $47 million of the investors' money stored on a cashier's check.

---

[19] https://gwins.org/cn/milesguo/22206.html; https://youtu.be/U6C0UO-r5rU.
[20] *See e.g.*, transcript of Sara Wei's June 25, 2020 livestream published on the GNews platform, https://gnews.org/zh-hans/245249/.

51.    After the investigations by various authorities became known, investors who sent money to VOG began requesting refunds from Ms. Wei and Mr. Guo.  Between August 2020 and the end of that year, Ms. Wei continued to ask VOG investors to wait patiently while she and her associates reached out to allegedly over 8,000 VOG investors to confirm receipt of their transfers before she could issue any refunds.  Periodically, investors were asked to fill out Google forms designed to gather identifying information of the transfers they made.

52.    In December 2020, VOG and Ms. Wei began issuing serial numbers to certain VOG investors so that they could purportedly track the status of their refund requests through a website that VOG had set up (https://bbs.vog.media/VAAQuery/).

53.    Based on information and belief, around the end of 2020, Mr. Guo and Ms. Wei reportedly had a fallout, which led to a halt in VOG and Ms. Wei's supposed refund process.  Each holding a portion of the $117 million, Mr. Guo and Ms. Wei each began blaming the other for defrauding the investors who sent money to Ms. Wei and/or VOG. In 2021, Ms. Wei and Guo began to tell investors that they could no longer refund investments because of the ongoing SEC investigation.

54.    For example, in a February 2, 2021 video posted on YouTube[21], Mr. Guo claims that GTV voluntarily turned over the $61 million received from Ms.Wei and/or VOG to SEC custody to protect the investors' interest.  Mr. Guo also claims that, in contrast to his voluntary cooperation with the SEC, the $48 million that Ms. Wei holds is not frozen at all and is probably used to cover her living expenses. Mr. Guo states that he is actively cooperating with the SEC and is requesting the SEC to refund the investors as soon as possible.

---

[21] https://youtu.be/88rQoh50lHk.

55.     An April 1, 2021 audio livestream held by Ms. Wei on Discord[22] painted a different picture. Ms. Wei claimed that she was cooperating and assisting the SEC investigation. She claimed to be the biggest victim of Guo's scheme, and that she is trying everything she can to remedy her wrongdoing and to help the investors get their money back. However, she claimed she could not disclose the details of her interactions with the SEC due to confidentiality requirements, nor could she distribute refunds because the investigation is not completed yet. Ms. Wei assured the investors that, when the time comes, the SEC would set up a website for investors to track the refund, much like the website VOG had set up.

### D.     Individual Plaintiffs' Experiences

#### 1.     Plaintiff Rong Zhang

56.     Plaintiff Zhang invested with Defendant Sara Wei and VOG with the intent of obtaining GTV shares.

57.     Plaintiff Zhang and her family had been followers of Mr. Guo on YouTube since approximately 2017 or 2018.

58.     In April 2020, Plaintiff Zhang and her family viewed Mr. Guo's livestream videos on YouTube, in which Mr. Guo preached the successful launching of GTV Media. Mr. Guo stated that GTV had seen exceptional viewer and visitor numbers[23] and that the company would see even greater success in the future.  Mr. Guo informed his viewers that GTV would start raising money through a private placement and that it would generate

---

[22] https://youtu.be/Hcozxlw3vHM.

[23] *See e.g.*, https://gnews.org/zh-hans/173170/ (Guo claiming in an April 10, 2020 livestream that more than 10 million people are watching);
https://gtv.org/video/id=5e972916c9e0f16aefbe267c (Guo claiming in an April 14, 2020 livestream on the GTV platform that approximately 10 to 20 million people are watching);
https://youtu.be/3PpxmHZ_5fU (Guo claiming that the actual number of visits of the GTV platform is around 500 million, despite the Chinese Communist Party's efforts to skew the numbers).  Zhang later discovered that these numbers given by Guo had been grossly exaggerated.

remarkable returns for early investors.  Based on these representations, Plaintiff Zhang and her family wanted to invest in GTV.

59.     Plaintiff Zhang and her family learned through Mr. Guo's videos that making a donation to the Rule of Law Foundation was a prerequisite to investing in GTV stock.

60.     Accordingly, on April 12, 2020, Plaintiff Zhang sent $500 to the Rule of Law Foundation III Inc. via PayPal in order to invest in GTV stock.

61.     On April 16, 2020, a member of Plaintiff Zhang's family emailed proof of the donation to Mr. Guo (gtvstock@gmail.com).

62.     On April 17, 2020, Mr. Guo replied to Plaintiff Zhang's family member, informing them that: "Currently the minimum amount is $100,000.  For amount less than $100,000, VOG will aggregate and invest.  Will register you if you want to join.  Thanks."

63.     On May 3, 2020, a member of Plaintiff Zhang's family emailed Ms. Wei (sarawei@protonmail.com) inquiring whether they were approved to invest.  Ms. Wei then requested to see the proof of their donation to the Rule of Law Foundation.

64.     Later that same day, after confirming Plaintiff Zhang's transfer of $500 to the Rule of Law Foundation, Ms. Wei stated in an email to Plaintiff Zhang's family member: "the minimum investment is 100 thousand dollars. For investment under 100 thousand: based on trust, you can join our VOG partnership team. Please reply if confirmed to invest, I will register you[.] Please attach a proof of donation of your donation in the Rule of Law Foundation[.] must be with date[.] thank you very much!"

65.     Plaintiff Zhang's family member replied to Ms. Wei that they would like to be registered to make an investment of $100,000.

66.     On May 5, 2020, Ms. Wei emailed Plaintiff Zhang's family member a series of steps, directing them to (1) follow a link to a Google Drive which contained wire transfer instructions and the blank limited purpose agency agreement; (2) fill out the limited purpose agency agreement, attach a photocopy of their ID, attach a copy of their

wire transfer confirmation, (3) email the documentation to vog202064@protonmail.com; and (4) wait for VOG to countersign the agreement.

67.    On May 11, 2020, Plaintiff Zhang invested in GTV through VOG in order to obtain GTV shares, despite meeting the supposed $100,000 minimum threshold for direct investment in GTV.    Following Ms. Wei's instruction, Plaintiff Zhang sent $100,000 to VOG via wire transfer to VOG's Wells Fargo Bank, NA. account (Account No. ending in 536).    On that same day, she emailed the executed limited purpose agency agreement, the wire transfer confirmation, a photocopy of her passport, and a proof of donation to the Rule of Law Foundation to vog202064@protonmail.com.

68.    Since then, Plaintiff Zhang has made multiple inquiries as to the investment and has requested a refund.    No refund or financial information has been provided to date. Nor has Zhang received proof of ownership in GTV.

### 2.    Plaintiff Chong Shen Raphanella

69.    Plaintiff Chong Shen Raphanella invested with Defendant Sara Wei and VOG with the intent of obtaining GTV shares.

70.    On or about April and May 2020, Plaintiff Raphanella viewed Mr. Guo's livestream videos announcing and promoting the private placement of GTV stock, in which he touted that original issue shares would generate 100-fold return.    Mr. Guo stated multiple times in various livestream videos that investors with more than $100,000 should contact him directly, while investors with less than $100,000 should contact Ms. Wei for a collective investment through VOG.

71.    On May 12, 2020, Plaintiff Raphanella saw Ms. Wei's livestream video, in which Ms. Wei stated that VOG would pool investors' money to invest in shares of GTV, and that even a small investment as low as $100 is acceptable.    In addition, Ms. Wei stated that investors were required to provide her with a proof of donation to the Rule of Law Foundation, as well as informing her of the amount of the intended investment in GTV.

72.    On May 28, 2020 Plaintiff Raphanella sent $30 to Mr. Guo via Livestream, a platform on which Mr. Guo streamed, in order to qualify to make an investment in GTV through VOG.

73.    On or about May 22, 2020, Plaintiff Raphanella spoke with Ms. Wei in a Discord chatroom, in which Wei confirmed the receipt of Plaintiff Raphanella's donation to Mr. Guo via Livestream, and directed her to a Google Drive which contained wire transfer instructions and a blank limited purpose agency agreement.

74.    On May 27 and 28, 2020, in accordance with Ms. Wei's instructions, Plaintiff Raphanella made two wire transfers, each of $5,000, via Bank of America to VOG's bank account at Bank of America (Account No. ending in 226).

75.    On May 28, 2020, she emailed Ms. Wei (sarawei@protonmail.com) the two wire transfer confirmations, the executed limited purpose agency agreement, and a photocopy of her driver's license.

76.    Plaintiff has made multiple inquiries as to the investment and has requested a refund.  No refund, proof of the investment in GTV, or financial information has been provided to date.

**3.    Plaintiff Xiaodan Wang**

77.    Plaintiff Xiaodan Wang invested with Defendant Sara Wei and VOG with the intent of obtaining GTV shares.

78.    In or about April and May 2020, Plaintiff Wang viewed Mr. Guo's livestream videos on YouTube, in which he stated that he had launched GTV and would soon issue stock.  Mr. Guo stated that original issue shares would generate 100-fold profit. Mr. Guo also stated that people interested in making an investment of more than $100,000 should contact him directly, while people interested in making an investment of less than $100,000 should contact Ms. Wei.

79.     In May 2020, Plaintiff Wang joined Ms. Wei's Discord channel, in which she learned that donating to the Rule of Law Foundation or the Rule of Law Society is a prerequisite for investing in GTV.

80.     On May 13, 2020, she sent $100 via PayPal to Rule of Law Society IV Inc. in order to submit the investment to VOG.

81.     On May 16, 2020, she communication with Sara Wei in a Discord chatroom, during which Ms. Wei confirmed receipt of Plaintiff Wang's donation to the Rule of Law Society IV, Inc. and directed her to the Google Drive which contained wire transfer instructions and the blank limited purpose agency agreement.

82.     On May 19, 2020, she made a wire transfer in the amount of $50,000 through Bank of Montreal to VOG's account at Wells Fargo.

83.     On May 21, 2020, she made a second wire transfer in the amount of $20,000 through Bank of Montreal to VOG's account at JP Morgan Chase Bank.  This transfer was later rejected, and the $20,000 was returned.

84.     On    May    25,    2020,    Plaintiff    Wang    emailed    Ms.    Wei (vog202064@protonmail.com) the following: (1) three executed limited purpose agency agreements, one for an investment amount of $50,000, one for an investment amount of $20,000, and one for an aggregated investment amount of $70,000[24]; (2) two wire transfer confirmations, in the amount of $50,000 and $20,000 respectively; (3) a photocopy of Plaintiff Wang's passport; (4) proof of a donation of $100 made by a credit card to the Rule of Law Society via PayPal; and (5) a photo of a credit card with Plaintiff Wang's name, in order to prove that the donation was made by her.

---

[24] Plaintiff Wang explained in her email that because she made two separate wire transfers, she was unsure whether the amount indicated in the limited purpose agency agreement should be aggregated.  For Ms. Wei's convenience, Plaintiff Wang executed three agreements and asked Ms. Wei to countersign the agreement(s) as appropriate.  However, Plaintiff Wang never received a countersigned agreement from Ms. Wei.

85.     Plaintiff Wang has made multiple inquiries as to the investment and has requested a refund.  No refund, proof of the investment in GTV, or financial information has been provided to date.

**V.     CLASS ACTION ALLEGATIONS**

86.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who made payment for GTV securities through VOG and Sara Wei and neither received such securities nor received a refund of their investment (the "Class"). This action seeks to recover damages for the Class caused by Defendants' violations of state securities laws and to pursue remedies under Title 44 (44-1841; 44-1842; 44-1991; 44-1998; 44-1999) of the Arizona Revised Statutes, as well as violations of common law, against VOG, GTV, and certain of their affiliates.  Excluded from the Class are Defendants and their families, the officers and directors of VOG, GTV, or Saraca Media at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

87.     The members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, at least $117 million was taken in by Ms. Wei or VOG from numerous individuals for what was supposed to be a pooled investment in GTV.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class and that they are geographically dispersed.

88.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions that may affect individual Class members, include, *inter alia*:

(a)     whether the Defendants sold unregistered securities in violation of the Arizona Revised Statutes;

(b)   whether the Defendants employed a device, scheme or artifice to defraud members of the Class;

(c)   whether the Defendants made untrue statements as to the scope and valuation of GTV to the members of the Class and the general public;

(d)   whether the Defendants engaged in transactions, practice, or course of business which operated as fraud;

(e)   whether the Defendants were unjustly enriched by their conduct; and

(f)   whether the members of the Class have sustained damages as a result of the actions of Defendants.

89.   Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from the Defendants' wrongful conduct in a substantially identical manner.

90.   Plaintiffs will adequately protect the interests of the Class and have retained counsel experienced in class action litigation.  Plaintiffs have no interests that conflict with those of the other members of the Class.

91.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.   CLAIMS FOR RELIEF

### COUNT I

**Violation of Section 44-1991 of the Arizona Revised Statutes –**

**Fraud in the purchase or sale of securities.**

**(Against Defendants Guo, Wei, GTV, and VOG)**

92.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

93.   Section 44-1801 of the Arizona Revised Statutes defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

94.   The interests in GTV marketed by Defendants are securities within the meaning of Section 44-1801 of the Arizona Revised Statutes.

95.     The offerings by GTV and VOG do not consist of covered securities as defined in 15 U.S.C. § 78bb(f), and therefore are not preempted by the Securities Litigation Uniform Standards Act.

96.     No registration of the securities was filed with the Arizona Corporate Commission as the interests fail to qualify for registration pursuant to Title 44, Article 6 or Article 7 of the Arizona Revised Statutes as the securities failed to include among other things, a proper prospectus, financial statements, or have a long enough corporate existence to qualify.

97.     Section 44-1841 of the Arizona Revised Statutes relevantly provides:
A.      It is unlawful to sell or offer for sale within or from this state any securities unless the securities have been registered pursuant to article 6 or 7 of this chapter or are federal covered securities if the securities comply with section 44-1843.02 or chapter 13, article 12 of this title.

98.     As it relates to Defendants Guo, Wei, GTV, and VOG, when Defendants solicited Plaintiffs to invest in GTV, and provided Plaintiffs with investment information and documents to make an investment in GTV, via VOG with its bank accounts in Arizona, Defendants engaged in the deceptive and fraudulent sale of unregistered securities.

99.     As part of Defendants' scheme, donations were required to be made to Rule of Law Foundation or the Rule of Law Society as part and parcel of the fraudulent practices.

100.    Moreover, when Defendants failed to provide financial confirmation, statements, or other indicia of ownership of the securities, each knowingly engaged in a scheme to defraud Plaintiffs and the Class.

101.    Similarly, when Defendants failed to provide any refund for the funds invested by the Plaintiffs and the members of the Class after failing to provide any proof of equity ownership to said Plaintiffs and members of the Class, Defendants continued their course of business that operated as a fraud and deceit.

102.    Additionally, in violation of Section 44-1842, Ms. Wei and Mr. Guo do not appear to be registered dealers or salesmen according to the SEC's Investment Advisor Public Disclosure search or FINRA's BrokerCheck, yet engaged in the sale of these securities.

103.    By reasons of the conduct herein alleged, each Defendant offered and/or controlled a person who offered and/or sold a security in violation of Section 44-1991 of the Arizona Revised Statutes and is thus liable to Plaintiffs and the Class.  Plaintiffs and the Class sought the purchase of the improperly offered securities, which were offered without a registration statement and not subject to any exemption under the State of Arizona's statutes and regulations, and were damaged thereby.

104.    Plaintiffs seek remedy pursuant to Section 44-2001 and 44-2002 of the Arizona Revised Statutes.

<u>**COUNT II**</u>

**Violation of Section 44-1998 of the Arizona Revised Statutes –**

**Offers and sales; Liability.**

**(Against Defendants Guo, Wei, GTV, and VOG)**

105.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

106.    Section 44-1801 of the Arizona Revised Statutes defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

107.    The interests in GTV marketed by Defendants are securities within the meaning of Section 44-1801 of the Arizona Revised Statutes.

108.    The offerings by GTV and VOG do not consist of covered securities as defined in 15 U.S.C. § 78bb(f), and therefore are not preempted by the Securities Litigation Uniform Standards Act.

109.    No registration of the securities was filed with the Arizona Corporate Commission as the interests fail to qualify for registration pursuant to Title 44, Article 6 or Article 7 of the Arizona Revised Statutes as the securities failed to include among other

things, a proper prospectus, financial statements, or have a long enough corporate existence to qualify.

110. Section 44-1841 of the Arizona Revised Statutes relevantly provides:

A. It is unlawful to sell or offer for sale within or from this state any securities unless the securities have been registered pursuant to article 6 or 7 of this chapter or are federal covered securities if the securities comply with section 44-1843.02 or chapter 13, article 12 of this title.

111. Section 44-1998 of the Arizona Revised Statutes relevantly provides:

A. In any case relating to securities offered or sold within or from this state, any person who offers or sells a security by means of a prospectus or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading is liable to the purchaser of the security from that person, as long as the purchaser did not know of the untruth or omission, as provided by this section. The purchaser may bring an action in any court or administrative forum of competent jurisdiction to recover the consideration paid for the security with interest, minus the amount of any income received from the security, on the tender of the security, or for damages if the purchaser no longer owns the security.

112. As it relates to Defendants Guo, Wei, GTV, and VOG, when Defendants solicited Plaintiffs to invest in GTV, and provided Plaintiffs with investment information and documents to make an investment in GTV, via VOG with its bank accounts in Arizona, Defendants engaged in the deceptive and fraudulent sale of unregistered securities.

113. Defendants knowingly engaged in conduct that sought to circumvent federal regulations of exempt securities by pooling unaccredited investors through VOG. The failure to disclose the illegality of the investment contract as well as the failure to deliver any proof of ownership following the purchase by Plaintiffs and the members of the Class rendered Defendants' representations materially misleading.

114. By reasons of the conduct herein alleged, each Defendant offered and/or controlled a person who offered and/or sold a security in violation of Section 44-1998 of the Arizona Revised Statutes and is thus liable to Plaintiffs and the Class. Plaintiffs and

the Class sought to purchase the improperly offered securities, which were offered through materially misleading methods, and Plaintiffs were damaged thereby.

### COUNT III

### Unjust Enrichment

### (Against All Defendants)

115.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

116.   Plaintiffs and the Class members each conferred a benefit on Defendants when they wired funds to Sara Wei and/or VOG as "agents" designated by Defendant to pool funds for investment in GTV securities.

117.   Sara Wei and VOG thereafter transferred a portion of Plaintiffs' and the Class' funds to GTV and Saraca.

118.   Plaintiffs and the Class transferred funds based on Defendants' material misstatements and/or omissions, as well as the promise to provide Plaintiffs with GTV securities.

119.   Defendants never provided Plaintiffs or the Class with GTV securities, although Defendants received the funds voluntarily and never returned the funds to Plaintiffs or the Class.

120.   Defendants have retained the money transferred by Plaintiffs and the Class and have engaged in a pattern of false, misleading and deceptive conduct designed to prevent Plaintiffs from recovering their funds.

121.   It would be against equity and good conscience to permit Defendants to continue to retain that money at Plaintiffs' and the Class' expense.

### COUNT IV

### Common Law Fraud

### (Against Defendants Guo, Wei, GTV, and VOG)

122.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

123. Defendants each and together made material misstatements and/or omissions about the GTV securities and GTV's business in connection with the sales of GTV securities, as set forth above.

124. Defendants' material misstatements and/or omissions were made with knowledge of their falsity or misleading character and with an intent to deceive, manipulate, and defraud Plaintiffs into purchasing GTV securities through Ms. Wei and VOG.

125. Defendants' material misstatements and/or omissions include:

a.     False or misleading statements concerning the value of GTV;

b.     False or misleading statements concerning the true nature of the GTV investment;

c.     False or misleading statements concerning the relative risk of the GTV securities;

d.     False or misleading statements concerning how the securities would be obtained through VOG;

e.     False or misleading statements concerning how Plaintiffs' funds would be used if invested and or transferred; and

f.     False or misleading statements concerning the relationships between or among each of the Defendants.

126. Plaintiffs reasonably relied on these misstatements and/or omissions and transferred funds to Ms. Wei and VOG to be transferred to GTV and Saraca at the instruction of Defendant Guo.

127. Had Plaintiffs known the truth, they would not have transferred funds to invest in GTV securities.

128. As a result of Defendants' misstatements and/or omissions, Plaintiffs and the Class have been injured in the loss of their entire investments in the purchase of GTV securities.

129.   It would be against equity and good conscience to permit Defendants to continue to retain that money at Plaintiffs' and the Class' expense.

## COUNT V

### Common Law Conspiracy to Defraud

### (Against All Defendants)

130.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

131.   Defendants, and each of them, combined and agreed with each other and/or others to defraud Plaintiffs and the Class by making material misstatements and/or omissions about the GTV securities and GTV's business in connection with the sales of GTV securities as alleged in paragraphs 111-129 above.

132.   The conspiracy commenced at least as early as Spring 2020.

133.   Pursuant to their agreement(s), Defendants, and each of them, acted in concert to support their common purpose of defrauding Plaintiffs and the Class in order to cause Plaintiffs and the Class to divert money from Plaintiffs and the Class to their own benefit.

134.   Each Defendant committed at least one overt act in furtherance of such conspiracy, including making false or misleading statements concerning the true nature of the GTV investment, making false or misleading statements concerning the relative risk of the GTV securities; making false or misleading statements concerning how the securities would be obtained through VOG; making false or misleading statements concerning how Plaintiffs' funds would be used if invested and/or transferred; and making false or misleading statements concerning the relationships between or among each of the Defendants.

135.   Each Defendant acted with the common intent to defraud Plaintiffs and the Class and understood that all other Defendants shared in that common purpose.

136.   Defendants' conduct was willful, wanton, and malicious.

137.   Defendants' unlawful conspiracy has directly, illegally, and proximately caused and continues to cause injuries to Plaintiffs and the Class in their property and health.

### COUNT VI

### Negligent Misrepresentation

### (Against Defendants Guo, Wei, GTV, and VOG)

138.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

139.   Defendants made repeated material misrepresentations and omissions to Plaintiffs, which they knew, or were negligent in not knowing, were false. Specifically, Defendants made statements or omissions to Plaintiffs which misrepresented: the true value of GTV, the true nature of the GTV investment, the relative risk of the GTV securities, how the securities would be obtained through VOG, how Plaintiffs' funds would be used if invested and/or transferred, and the relationship between or among each Defendant.

140.   These statements and omissions were false and/or misleading at the time they were made, and were material to Plaintiffs' decisions to transfer funds to invest in GTV securities. Defendants failed to exercise reasonable care or competence in communicating this false and/or misleading information to Plaintiffs.

141.   Plaintiffs justifiably relied on Defendants' misrepresentations in making their decision to transfer funds to Defendant Wei and VOG, to be transferred to GTV and Saraca.

142.   Defendants understood, or should have reasonably understood, that Plaintiffs were relying upon Defendants' representations in making the decision to transfer their money to Defendants.

143.   Plaintiffs were damaged as the result of Defendants' misrepresentations in an amount to be determined at trial.

1

## VII.   PRAYER FOR RELIEF

2

WHEREFORE, Plaintiffs demands judgment as follows:

3

(A)   Declaring this action to be a class action pursuant to Rule 23 of the Federal

4  Rules of Civil Procedure, and designating Plaintiffs as class representatives and Plaintiffs'

5  counsel as Class Counsel;

6

(B)   Awarding compensatory damages in favor of Plaintiffs and the other

7  members of the Class against all of the Defendants, jointly and severally, for all damages

8  sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,

9  including interest thereon;

10

(C)   Awarding treble damages in favor of Plaintiffs and the other members of the

11  Class against all of the Defendants, jointly and severally, for damages sustained as a result

12  of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

13  and

14

(D)   Awarding Plaintiffs and the Class their reasonable costs and expenses

15  incurred in the prosecution of this action, including reasonable attorneys' fees and expert

16  fees; and

17

(E)   Awarding such other and further relief as the Court may deem just and

18  proper.

19  ## VIII.   JURY DEMAND

20

Plaintiffs hereby demand a trial by jury.

21

22  Dated: June 21, 2021                        Respectfully Submitted,

23

24                                        */s/ Matthew M. Guiney*
                                          Matthew M. Guiney

25                                            (*pro hac vice* to follow)
                                          WOLF HALDENSTEIN ADLER

26                                            FREEMAN & HERZ LLP
                                          270 Madison Avenue

27                                        New York, NY 10016

28                                        Tel.: (212) 545-4600

Fax: (212) 686-0114
guiney@whafh.com

**LYNCH DASKAL EMERY LLP**
137 W. 25th St.
New York, NY 10001
Tel.:  (212) 302-2400

*Attorneys for Plaintiffs Rong Zhang, Xiaodan Wang, and Chong Shen Raphanella and Proposed Lead Counsel for the Class*